**Omega R. AUTRY, Plaintiff-Appellant,**

v.

**NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES, Defendant-Appellee.**

**No. 86–1678.**

United States Court of Appeals, Fourth Circuit.

Argued March 3, 1987.

Decided June 25, 1987.

Shelley Blum, Charlotte, N.C., for plaintiff-appellant.

John R. Corne, Asst. Atty. Gen., Raleigh, N.C. (Lacy Thornburg, Atty. Gen., on brief), for defendant-appellee.

Before RUSSELL and CHAPMAN, Circuit Judges, and KISER, United States District Judge for the Western

District of Virginia, sitting by designation.

KISER, District Judge:

This Title VII race discrimination case is on appeal from the United States District Court for the Western District of North Carolina, Charlotte Division, 641 F.Supp. 1492. At the close of Plaintiff's evidence during a trial held on July 21 and 22, 1986, the trial judge granted Defendant's Motion to Dismiss pursuant to Fed.R.Civ.P. 41(b). The judge made oral findings on the record when he granted the Motion and later followed up with a written Memorandum and Order.

Plaintiff's Complaint alleged race discrimination in employment based upon her failure to receive a promotion. In the fall of 1983, Plaintiff had applied for a promotion to Child Support Supervisor I, a supervisory position in the Child Support Enforcement Agency, a state agency in North Carolina that had employed Plaintiff since 1976. The pool of applicants, all of whom met the minimum qualifications for the promotion, consisted of one black male, two white females, and three black females, of which Plaintiff was one. One of the white females, Victoria Lipscomb, received the promotion.

There is no dispute that the successful candidate was a friend of the white female (Jean Bost) who conducted the interviews and made the promotion decision. It is also undisputed that Lipscomb's mother, Doris Cromartie, was a member of the North Carolina Banking Commission until late September of 1983, and that she had political ties with the Democratic Party that went back many years. Nevertheless, these undisputed facts do not show, either directly or indirectly, any evidence of race discrimination. Plaintiff has alleged that an inference of racial discrimination arises in a situation where friendship and/or politics are the likely bases for promotion and those in power are of the white race. Plaintiff, however, has been unable to cite any case law to that effect and from a theoretical standpoint, Plaintiff's rather novel argument would better suit a disparate impact case than a disparate treatment case. But even if we accept Plaintiff's legal argument, her case still must fail because absolutely no evidence was presented at trial that Lipscomb's mother played any role in her promotion, and even the evidence that Lipscomb and Bost were friends was minimal.

The trial judge, in granting Defendant's Motion to Dismiss pursuant to Fed.R.Civ.P. 41(b), commented on the theory advanced by Plaintiff and stated that although hiring decisions should always be made objectively, they are not always conducted in that manner. However, the judge also observed that a race discrimination case is not made out by showing that friendship or politics may have entered into a promotion decision. The language of the applicable statute, 42 U.S.C. § 2000e–2, specifically limits its coverage to unlawful employment practices occurring because of an individual's "race, color, religion, sex, or national origin."

In a disparate treatment case, such as this, a plaintiff must prove intentional racial discrimination. A prima facie case of race discrimination under Title VII requires showing a connection between race and the adverse employment decision. As the Supreme Court noted in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1818, 1824, 36 L.Ed.2d 668 (1973), a private plaintiff in a Title VII race discrimination in employment case may meet his burden of establishing a prima facie case of discrimination by showing the following:

(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

The fourth prong of the test set forth in *McDonnell Douglas* was discussed in the recent case of *Holmes v. Bevilacqua*, 794 F.2d 142 (4th Cir.1986). The *Holmes* court concluded that the four prong scheme applies to situations in which several qualified employees apply for one available promotion and no vacancy exists once the promotion occurs, and with regard to the fourth prong, stated:

[U]nder the fourth prong, since the plaintiff cannot prove that the vacancy remained open after he was rejected, he must present some other evidence that his race was a factor considered by his employer in not granting him the promotion. There must be some evidence that race was a determining factor in the employer's decision.

*Id.* at 147.

■ In the present case, it is undisputed that Plaintiff has readily met the first three prongs of the *McDonnell Douglas* test. She has shown that she belongs to a racial minority, that her employer sought applicants for a position that Plaintiff was qualified for and for which she applied, and that despite her qualifications, she did not receive the promotion she sought. The Plaintiff has the same problem with the fourth prong of the test that the *Holmes* court addressed in that only one vacancy existed and that once Lipscomb was selected, the position did not continue to remain open and the employer did not continue to seek applicants of Plaintiff's qualifications. Thus, Plaintiff would be required to present some other evidence that her race was a determining factor in the employment decision.

In the current matter, as in *McDonnell Douglas*, the trial court correctly concluded that the Plaintiff had established that she was a black individual entitled to the protections of Title VII and that she was not promoted. In order to establish a case of race discrimination, however, Plaintiff would have to be able to show a connection between her race and her failure to be promoted. In other words, she would have to show that she was not promoted *because of* her race, not that she was a member of the black race *and* was not promoted. *See also Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ Because this is a disparate treatment case, the Plaintiff is required to establish a prima facie case in either of two ways: by direct evidence of discrimination or by indirect evidence that would support a reasonable probability that the Plaintiff would have been promoted but for her race. In the present case, the review of the record by this Court substantiates the findings of the trial judge that Plaintiff failed to establish a prima facie case. In fact, it is the conclusion of this Court that, construing all of the evidence presented by Plaintiff in the light most favorable to her, she has failed to raise more than a remote possibility that but for her race she would have been promoted.

Although written in an Age Discrimination in Employment (ADEA), 29 U.S.C. § 621, *et seq.,* context, the case of *Lovelace v. Sherwin-Williams Company,* 681 F.2d 230 (4th Cir.1982), speaks to the present situation. In *Lovelace,* the issue to be resolved was the propriety of the trial court's granting judgment n.o.v. for the employer/defendant in a demotion matter. In upholding the trial court's decision, the *Lovelace* court referred to the principle established by several products liability/personal injury cases that the fact-finder must not be permitted to engage in surmise and conjecture but rather causation must be shown by probability rather than mere possibility. The test of evidentiary sufficiency in the product/injury cases thus was held to be applicable to the motivational cause issue in ADEA cases. The logical extension of the *Lovelace* reasoning is its application to Title VII nonjury cases as well. Even though Title VII cases are tried by the court, the court should no more be permitted to speculate than should a jury panel.

A final area that bears comment is the submission of supplemental memoranda in response to a request made during the course of the arguments presented on March 3, 1987. One matter that the parties were asked to examine was whether the case of *DeCintio v. Westchester County Medical Center,* 807 F.2d 304 (2d Cir.1986), would have any impact on the proper disposition of the present matter. In *DeCintio,* the United States Court of Appeals for the Second Circuit reversed a decision of the district court in favor of seven male respiratory therapists who had brought an action based on Title VII and the Equal Pay Act. The essence of the sex discrimination allegations in the *DeCintio* case was that the male Program Administrator of the Respiratory Therapy Department, who was

empowered to hire someone to fill a new position as Assistant Chief of Respiratory Therapy, implemented the requirement that applicants for that position had to be registered by the National Board of Respiratory Therapy. Because none of the male staff respiratory therapists were so registered, the Program Administrator was able to fill the position with a properly qualified woman with whom he had a romantic relationship. In reversing the decision of the court below in favor of these male respiratory therapists, the Second Circuit examined whether the sexual discrimination provisions of Title VII encompassed disparate treatment based on a romantic relationship between an employer and a person given preference in a hiring decision. The court concluded that "[s]uch an overbroad definition is wholly unwarranted." *Id.* at 306. The obvious applicability of *DeCintio* to the present case is to undermine Plaintiff's position in that a voluntary ongoing friendship would be an inappropriate basis for a Title VII suit.

In accordance with the foregoing discussion, the decision of the District Court to grant Defendant's Motion to Dismiss pursuant to Fed.R.Civ.P. 41(b) is

AFFIRMED.